**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Trenton Vicinage)**

| | |
|---|---|
| GEODIS USA, LLC<br>7101 Executive Center Drive<br>Suite 333<br>Brentwood, TN 37027<br><br>     Plaintiff,<br><br>  v.<br><br>MASSIMO BRAVI<br>12133 Taylor Court<br>West Windsor Township, NJ 08550<br><br>  and<br><br>GENERAL NOLI USA, INC.<br>154-09 146th Avenue, 3rd Floor<br>Jamaica, NY 11434<br><br>     Defendants. | CIVIL ACTION<br><br>NO. |

**COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff GEODIS USA, Inc. ("GEODIS" or "Plaintiff"), by and through its attorneys, Fisher & Phillips LLP, by way of Complaint seeking preliminary and permanent injunctive relief and damages against Defendants Massimo Bravi ("Bravi") and General Noli USA, Inc. ("General Noli") (Bravi and General Noli are referred to collectively herein as "Defendants"), states and alleges the following:

**INTRODUCTION**

1.  GEODIS is a world leader in transport and logistics, with widely

acknowledged expertise in all aspects of the supply chain. It delivers shipments through its operations in land, air and sea transport, as well as contract logistics.

2.      Bravi was employed by GEODIS as Director of Business Development until his employment ended on April 3, 2023.

3.      Bravi is now employed by Defendant General Noli—a direct competitor of GEODIS.

4.      GEODIS recently discovered that, while an employee of GEODIS, Bravi took GEODIS' confidential, proprietary, and/or trade secret information and then absconded with that information to General Noli.

5.      In fact, while employed by GEODIS, Bravi e-mailed six (6) Microsoft Excel spreadsheets to his own personal e-mail account in order to prepare and execute a business plan on behalf of General Noli.

6.      The spreadsheets contain information regarding sales representative performance data and customer sales volumes—all of which belongs to GEODIS—and would be extremely beneficial to a competitor, such as General Noli.

7.      Now, it appears the Defendants are using this information in aid of soliciting GEODIS customers and unfairly competing with GEODIS.

8.      The documents that Bravi misappropriated on behalf of his current employer, General Noli, are valuable, only accessible by a limited number of GEODIS employees, not known outside of GEODIS and only to GEODIS employees, and would be extremely difficult to acquire or independently duplicate.

9.      GEODIS brings this action to protect its valuable client relationships,

2

goodwill, and confidential, proprietary, and/or trade secret information; to enforce Bravi's contractual non-solicitation and confidentiality obligations; to prevent Bravi and anyone else acting on his behalf from further misappropriating, using, or disclosing GEODIS' confidential, proprietary, and trade secret information; and to prohibit Defendants from unfairly competing with GEODIS.

## PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff GEODIS USA, Inc. is a corporation organized under the laws of the State of Tennessee and with its principal place of business at 7101 Executive Center Drive, Suite 333, Brentwood, TN 37027.

11.     Defendant Massimo Bravi is an adult individual who, upon information and belief, resides at 12133 Taylor Court, West Windsor Township, NJ 08550, and is currently employed by Defendant General Noli.

12.     Defendant General Noli USA, Inc. is a corporation organized under the laws of the State of New York and with its principal place of business at 154-09 146th Avenue, 3rd Floor, Jamaica, NY 11434. General Noli is a direct competitor of GEODIS.

13.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 18 U.S.C. § 1836(c) because GEODIS asserts claims under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, et seq.

14.     The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1367 over state law claims.

15.     The Court also has diversity jurisdiction under 28 U.S.C. §1332, because there is complete diversity of citizenship and the amount in controversy exceeds the sum

or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Injunctive relief is also sought.

16.     Venue in this Court is appropriate under 28 U.S.C. §1391, because Defendant Bravi resides in this District and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

### I.     Bravi's Nefarious Conduct

17.     Bravi was hired by GEODIS in or around March of 2011.

18.     Bravi worked for GEODIS until his employment ended on April 3, 2023.

19.     During his tenure, Bravi was promoted to various roles throughout his employment with GEODIS.

20.     Most recently, on December 2, 2020, GEODIS extended Bravi a promotion to the position of Director of Business Development, effective January 4, 2020.

21.     On December 11, 2020, Bravi concurrently signed a promotion letter and a Non-Solicitation and Confidentiality Agreement (the "Agreement") with GEODIS as a condition of his promotion to the new role of Director of Business Development. (A true and correct copy of the Agreement is attached hereto as **Exhibit A**).

22.     Bravi signed the Agreement in consideration of "hav[ing] access to information that [GEODIS] considers confidential and proprietary" and to protect such information considering his promotion to a managerial role. *Id.* at Preamble.

23.     Under the Agreement, Bravi acknowledged "that Employer has legally protectable business interests in the continued employment of its existing employees and

4

in the relationships it has formed with customers." *See* Exhibit A at § 2.

24.     Under the Agreement, Bravi agreed:

> For a period of two (2) years from the date that Employee's employment terminates ("Employment Termination Date"), the Employee shall not, without the express prior written consent of the Employer, directly or indirectly, whether for his own benefit or for the benefit of any person or entity other than the Employer or any affiliate, (i) hire, offer to hire, assist in the hiring of, divert, entice away, solicit, or (ii) in any other manner persuade, or attempt to do any of the foregoing (each, "Solicitation"), any person who is an officer or employee of the Employer or any of its subsidiaries to accept employment with a third party or engage in a Solicitation with respect to any Person or entity who is, or was, at any time within twelve (12) months prior to the Solicitation, an officer, employee, agent, or consultant of the Company or any of its subsidiaries.

*See* Exhibit A at § 2.

25.     Further, under the Agreement, Bravi promised that he would not solicit GEODIS' clients in order to divert their business away from GEODIS. Specifically, Bravi agreed:

> For a period of two (2) years from the Employment Termination Date, the Employee shall not, without the express prior written consent of the Employer, directly or indirectly, whether for his own benefit or for the benefit of any person or entity other than the Employer or any affiliate engage in a Solicitation (as the term is defined above), with respect to (1) any customer or supplier of the Employer or any of its subsidiaries, with whom Employee had direct contact during the preceding one (1) year of his employment for Employer, to become a customer or supplier of any third party engaged in a Restricted Business, (2) any customer or supplier of the Employer or any of its subsidiaries, with whom Employee had direct contact during the preceding one (1) year of his employment for Employer, to cease doing business with the Employer or any of its subsidiaries.

*See* Exhibit A at § 2.

26.    Bravi also acknowledged that GEODIS' Confidential Information is the property of GEODIS and its subsidiaries. *See* Exhibit A at § 3.

27.    Bravi promised that "[d]uring the Employee's term of employment with the Employer or its affiliates, and thereafter, the Employee shall not disclose to any person or use or otherwise exploit for his own benefit or for the benefit of anyone other than the Employer or any subsidiary thereof, any Confidential Information." *See* Exhibit A at § 3.

28.    The Agreement defines "Confidential Information" as:

> any information that the Employer or its affiliates has treated or could reasonably be expected to treat as confidential, proprietary or sensitive information in respect of the conduct or details of the business of the Employer or any subsidiary thereof, or any confidential or proprietary information of third persons in the possession of the Employer or its subsidiaries, including methods of operation, customer lists, products (existing and proposed), prices, pricing structures, fees, costs, invoices, profits, finances, earnings, volume of business, outlets, sales, markets, methods, systems, practices, strategic and other plans, research or customer projects, designs, technology, inventions, trade secrets, trade knowledge, know-how, software, computer programs (including documentation thereof), marketing methods, policies, personnel, suppliers, competitors, markets, or other specialized information or proprietary matters of the Employer or any subsidiary thereof, except during Employee's employment by Employer, Employee may disclose confidential and/or proprietary information of Employer as required in order to discharge his/her duties hereunder.

*See* Exhibit A at § 3.

29.    Additionally, Bravi acknowledged "that the restrictions of the obligations set forth in Sections 1 through 4 of this Agreement (i) are reasonable and no broader than

necessary to protect the legitimate business interests of the Employer and the goodwill thereof and (ii) do not and will not pose an unreasonable burden on the Employee." *See* Exhibit A at § 4.

30.     Bravi further acknowledge that "in the event of a breach or threatened breach of this Agreement, the Company or its successors or assigns, in addition to other rights and remedies existing in their favor, shall be entitled to specific performance or injunctive or other equitable relief from a court of competent jurisdiction in order to enforce, or prevent any violations of, the provisions herein, without the necessity of proving damages." *See* Exhibit A at § 4.

31.     In his new role, Bravi was responsible for managing the sales team for GEODIS for the Eastern half of the United States.

32.     Bravi had access to GEDOIS' trade secrets and confidential information, which he used to perform his job duties with GEODIS.

33.     Notwithstanding Bravi's legal obligations, GEODIS discovered through company e-mail records that Bravi met with a representative of Savino Del Bene Group, a direct competitor of GEODIS, via Microsoft Teams on February 17, 2023—**while Bravi was still an employee of GEODIS**.

34.     Based upon a review of Bravi's e-mail records, GEODIS discovered that on February 20, 2023—**while still an employee of GEODIS**—Bravi sent an e-mail from his GEODIS e-mail account to his personal e-mail account. The e-mail provided "a basic business plan on how to develop a sales team in the US from scratch."

35.     Based upon a review of Bravi's e-mail records, GEODIS discovered that

Bravi sent GEODIS' confidential information via e-mail from his GEODIS e-mail account to his own personal e-mail account on February 22, 2023—**while Bravi was still an employee of GEODIS**. The GEODIS confidential information included six (6) Microsoft Excel spreadsheets containing sales representative performance data and customer sales volumes.

36.     Based upon a review of Bravi's e-mail records, GEODIS discovered that Bravi sent another e-mail to his personal e-mail account on February 22, 2023—**while Bravi was still an employee of GEODIS**. This e-mail included Bravi's proposed business plan for developing a sales team in the United States for what would be his future employer, General Noli.  The e-mail and business plan revealed that Bravi used the confidential information he unlawfully transferred to a private e-mail account that same day. The proposed business plan included references to the six (6) sales representatives' compensation.

37.     After his separation from GEODIS, Bravi obtained employment with General Noli.

38.     General Noli is part of the Savino Del Bene Group, the direct competitor that Bravi met with via Microsoft Teams on February 17 and prepared a business plan using GEODIS' confidential information to develop a sales team in the United States—**while Bravi was still an employee of GEODIS**.

## II.    GEODIS' Core Business and its Trade Secret and Confidential Information

39.     GEODIS is in the highly competitive international business of providing transport and logistics and is recognized for its expertise and mastery of all aspects of the

supply chain.

40.     GEODIS has spent a significant amount of time and expenses developing and maintaining its goodwill and beneficial business relationships with its customers.

41.     GEODIS' ability to preserve the confidentiality of its trade secrets, proprietary and confidential information is imperative to its success. Access to GEODIS' confidential and proprietary business information would give any of its competitors who acquired such information an unfair competitive advantage. At a minimum, a competitor could use GEODIS' confidential and proprietary information to determine GEODIS' current and prospective clients, its marketplace strategies, and pricing information to undercut GEODIS' pricing, and to utilize and/or to counter its strategies and proposals all to solicit customers away from GEODIS.

42.     GEODIS' trade secret, confidential and proprietary business information includes, *inter alia*, information regarding its sales representatives' performance data, along with its customers' sales volumes—**which is the very information Bravi unlawfully took while he was still an employee of GEODIS**.

43.     GEODIS developed, compiled, or acquired its proprietary and confidential information at great expense and through substantial efforts over many years of work. This confidential and proprietary information is not readily ascertainable in any type of trade or public directory or any other source.

44.     For example, the performance data of GEODIS' sales representatives would be invaluable information to GEODIS' competitors. This information in the hands of a competitor would enable the competitor to prepare a business plan to develop a sales team

competitive to GEODIS—**which is exactly what Bravi did with this information while he was still an employee of GEODIS**.

45.    Similarly, the identity of GEODIS' customers, along with compilations of their sales volumes, would be invaluable information to GEODIS' competitors.

46.    Importantly, GEODIS has a duty to its customers to keep such information confidential.

47.    The misuse of GEODIS' confidential and proprietary information, whether through the improper disclosure or improper use for a non-GEODIS business purpose, would cause significant damage to GEODIS through potential loss of business and business opportunity, loss of goodwill, loss of employees through unfair and unlawful means, damage to reputation, and other types of harm.

48.    Accordingly, GEODIS has implemented comprehensive measures to protect and maintain the confidentiality of its confidential and proprietary information, including but not limited to written policies identifying GEODIS confidential information, the usage of agreements containing confidentiality and non-solicitation restrictions, password protected computer systems, limited access to GEODIS' physical facilities and databases, established safeguards against electronic access to or use of GEODIS information, and other reasonable efforts under the circumstances.

49.    As a result of such efforts, GEODIS' trade secrets and confidential information are not available to the public and are not readily available to its competitors. This confidential information gives GEODIS a valuable economic and competitive advantage over others who compete with GEODIS.

50.     The time, expense, and efforts that have gone into the development of GEODIS' confidential and proprietary information are substantial.

### III.     Bravi and General Noli Disregarded GEODIS' Cease and Desist Letter

51.     On April 28, 2023, unaware that Bravi had forward Confidential Information to his private e-mail account that he used to develop a business plan for a direct competitor, GEODIS sent Bravi correspondence reminding him of his post-employment obligations and enclosed a copy of the Agreement. (A true and correct copy of the April 28, 2023 correspondence is attached hereto as **Exhibit B**).

52.     In or around June of 2023, GEODIS was informed by its customer, Maui Jim, that Bravi had been calling and soliciting its business.

53.     On June 6, 2023, still unaware that Bravi had taken and used confidential and proprietary information on behalf of his new employer, GEODIS sent Bravi a cease-and-desist letter and again reminded him of his post-employment restrictive covenants. (A true and correct copy of the June 6, 2023 Cease-and-Desist Letter is attached hereto as **Exhibit C**).

54.     On June 6, 2023, GEODIS also sent correspondence to Bravi's new employer, General Noli USA, Inc., placing it on notice of Bravi's contractual post-employment obligations. (A true and correct copy of the June 6, 2023 Notice Letter is attached hereto as **Exhibit D**).

55.     GEODIS has since become aware that Bravi took its confidential and proprietary information—**during the time he was employed by GEODIS—** to develop a business plan for his new employer and solicit GEODIS' customers on behalf of that

11

competitor.

56.    By taking the confidential and proprietary information, Bravi and General Noli are unfairly competing with GEODIS.

57.    GEODIS is also concerned that Bravi maintains confidential business and/or customer information, which GEODIS is obligated to protect from disclosure.

58.    Bravi's solicitation of GEODIS customers and misappropriation of its trade secrets is an ongoing, irreparable harm to GEODIS.

59.    Any ongoing attempts by Bravi to solicit GEODIS customers would represent an immediate and irreparable harm and threat to GEODIS.

## CLAIMS FOR RELIEF

### COUNT ONE
#### MISAPPROPRIATION OF TRADE SECRETS
#### VIOLATION OF THE U.S. DEFEND TRADE SECRETS ACT
#### (AGAINST ALL DEFENDANTS)

60.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

61.    The confidential and proprietary information developed by GEODIS, and taken by Defendants, constitutes trade secrets that belong to GEODIS and are subject to protection under the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA").

62.    Bravi took and misappropriated GEODIS' trade secrets, confidential and proprietary business information including information regarding GEODIS' sales representatives' performance data, along with its clients' sales volumes. This will enable Defendants to use this information to divert business from GEODIS to General Noli and

to unfairly compete with GEODIS, for Defendants' benefit and to the detriment of GEODIS.

63.     Bravi is using GEODIS' trade secret, confidential and proprietary business information to solicit GEODIS' customers on General Noli's behalf. This involves the unauthorized use of such information as the identity of GEODIS' clients, along with compilations of their sales volumes, in breach of contractual, policy and legal duties of Bravi to maintain the secrecy of such confidential information and not to disclose it.

64.     Bravi is using GEODIS' trade secret, confidential and proprietary business information to unfairly compete with GEODIS on General Noli's behalf. This involves the unauthorized use of such information as the identity and performance data of GEODIS' sales representatives, in breach of contractual, policy and legal duties of Bravi to maintain the secrecy of such confidential information and not to disclose it.

65.     General Noli was aware of the contractual, policy and legal duties owed to GEODIS by Bravi with respect to GEODIS' confidential information, but it permitted and enabled Bravi to breach those duties so that it could benefit from GEODIS' confidential information.

66.     This confidential information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or to GEODIS' competitors. GEODIS spends significant sums, in terms of both financial and human resources, to develop, maintain, and safeguard this information, which is of great value to any competitor.

FP 47926022.1

67.     GEODIS' customers entrust GEODIS with their confidential information, with the expectation and promise that GEODIS will protect and maintain the safety of this information.

68.     GEODIS has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access its computer systems and records, and having contracts and policies that expressly prohibit the use, removal, and disclosure of such information outside GEODIS.

69.     The conduct of Defendants, including through their theft of GEODIS' confidential and proprietary business information regarding its sales representatives' performance data, along with its customers' sales volumes, set forth in this Count and throughout this Complaint constitutes a misappropriation and misuse of GEODIS' trade secret information in violation of the DTSA.

70.     Additionally, Defendants are currently in possession of GEODIS' trade secrets and acquired them by improper means.

71.     Bravi's misappropriation of GEODIS' trade secrets, and General Noli's assistance and facilitation of the same, have caused GEODIS irreparable injury for which monetary damages alone are an inadequate remedy.

72.     Defendants willfully and maliciously misappropriated GEODIS' trade secrets, with the intention of using these assets to GEODIS' detriment.

73.     This willful and malicious misappropriation of GEODIS' trade secrets justifies the award of reasonable attorneys' fees to GEODIS under the DTSA.

FP 47926022.1

74.     Defendants are directly and/or vicariously liable for the acts described herein.

75.     The misconduct undertaken by Defendants threatens further misappropriation of GEODIS' trade secrets.

76.     The acts described herein, as a violation of the DTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent Defendants' threatened misappropriation.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment on Count One in its favor and against Defendants; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

## COUNT TWO
### THREATENED MISAPPROPRIATION
### VIOLATION OF THE U.S. DEFEND TRADE SECRETS ACT
### (AGAINST ALL DEFENDANTS)

77.     GEODIS re-alleges, and incorporates by this reference, the allegations of the preceding paragraphs as though set forth fully herein.

78.     The confidential and proprietary information developed by GEODIS are trade secrets subject to protection under the DTSA.

79.     Defendants improperly accessed, obtained, and used GEODIS' confidential and proprietary information.

80.     This confidential and proprietary information derives independent economic value by not being accessible, through proper means, to competitors such as General Noli, which can profit from its use or disclosure. GEODIS has spent significant sums to develop and maintain this information, so that its employees can market to and service its customers, giving this confidential information great value to any competitor.

81.     GEODIS has taken more than adequate measures under the circumstances to maintain the secrecy of its trade secrets: assigning computer access passwords to be used to access GEODIS' computer systems and the electronic files and records residing on them; restricting access to its business premises, including its offices; and having employees follow confidentiality and non-disclosure policies, which expressly prohibit the use and disclosure of such information outside of GEODIS.

82.     The conduct of Defendants set forth in this Count and throughout this Complaint constitutes a threatened misappropriation of GEODIS' trade secret information in violation of the DTSA, because Defendants will use GEODIS' confidential and proprietary information without GEODIS' consent and despite the knowledge that this information was acquired by Bravi where he had duties to maintain this confidential information's secrecy and limit its use.

83.     This threatened misappropriation of GEODIS' trade secrets, and Defendants' assistance and facilitation of the same, have caused GEODIS irreparable injury for which monetary damages alone are an inadequate remedy.

84.     The threatened misappropriation of GEODIS' trade secrets by Defendants is willful and malicious, and therefore satisfies the requirement for an award of exemplary (punitive) damages.

85.     This willful and malicious misappropriation of GEODIS' trade secrets justifies the award of reasonable attorneys' fees to GEODIS under the DTSA.

86.     Defendants are directly and/or vicariously liable for the acts described herein.

87.     The acts described herein, as a violation of the DTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent Defendants' threatened misappropriation.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Two; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

**COUNT THREE**
**MISAPPROPRIATION OF TRADE SECRETS**
**VIOLATION OF THE NEW JERSEY UNIFORM TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

88.     GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

17

89.     The confidential and proprietary information developed by GEODIS, and taken by Defendants, constitutes trade secrets that belong to GEODIS and are subject to protection under the New Jersey Uniform Trade Secrets Act, N.J. Stat. Ann. § 56:15-1, *et seq.* (2022) ("NJUTSA").

90.     Bravi took and misappropriated GEODIS' trade secrets, confidential and proprietary business information including information regarding GEODIS' sales representatives' performance data, along with its clients' sales volumes. This will enable Defendants to use this information to divert business from GEODIS to General Noli and to unfairly compete with GEODIS, for Defendants' benefit and to the detriment of GEODIS.

91.     Defendant Bravi is using GEODIS' trade secrets, confidential and proprietary business information to solicit GEODIS' customers on behalf of General Noli. This involves the unauthorized use of such information as the identity of GEODIS' clients, along with compilations of their sales volumes, in breach of contractual, policy and legal duties of Bravi to maintain the secrecy of such confidential information and not to disclose it.

92.     Defendant Bravi is using GEODIS' trade secrets, confidential and proprietary business information on behalf of General Noli to unfairly compete with GEODIS. This involves the unauthorized use of such information as the identity and performance data of GEODIS' sales representatives, in breach of contractual, policy and legal duties of Bravi to maintain the secrecy of such confidential information and not to disclose it.

93.     General Noli was aware of the contractual, policy and legal duties owed to GEODIS by Bravi with respect to GEODIS' confidential information, but it permitted and enabled Bravi to breach those duties so that it could benefit from GEODIS' confidential information.

94.     This confidential information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or to GEODIS' competitors. GEODIS spends significant sums, in terms of both financial and human resources, to develop, maintain, and safeguard this information, which is of great value to any competitor.

95.     GEODIS' customers entrust GEODIS with their confidential information, with the expectation and promise that GEODIS will protect and maintain the safety of this information.

96.     GEODIS has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access its computer systems and records, and having contracts and policies that expressly prohibit the use, removal, and disclosure of such information outside GEODIS.

97.     The conduct of Defendants, including through their theft of GEODIS' confidential and proprietary business information regarding its sales representatives' performance data, along with its customers' sales volumes, set forth in this Count and throughout this Complaint constitutes a misappropriation and misuse of GEODIS' trade secret information in violation of the NJUTSA.

98.     Additionally, Defendants are currently in possession of GEODIS' trade secrets and acquired them by improper means.

99.     Bravi's misappropriation of GEODIS' trade secrets, and General Noli's assistance and facilitation of the same, have caused GEODIS irreparable injury for which monetary damages alone are an inadequate remedy.

100.    Defendants willfully and maliciously misappropriated GEODIS' trade secrets, with the intention of using these assets to GEODIS' detriment.

101.    This willful and malicious misappropriation of GEODIS' trade secrets justifies the award of reasonable attorneys' fees to GEODIS under the NJUTSA.

102.    Defendants are directly and/or vicariously liable for the acts described herein.

103.    The misconduct undertaken by Defendants threatens further misappropriation of GEODIS' trade secrets.

104.    The acts described herein, as a violation of the NJUTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent Defendants' threatened misappropriation.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Three; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages;

reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

**COUNT FOUR**
**THREATENED MISAPPROPRIATION OF TRADE SECRETS**
**VIOLATION OF THE NEW JERSEY UNIFORM TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

105.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

106.    The confidential and proprietary information developed by GEODIS are trade secrets subject to protection under the NJUTSA.

107.    Defendants improperly accessed, obtained, and used GEODIS' confidential and proprietary information.

108.    This confidential and proprietary information derives independent economic value by not being accessible, through proper means, to competitors such as General Noli, which can profit from its use or disclosure. GEODIS has spent significant sums to develop and maintain this information, so that its employees can market to and service its customers, giving this confidential information great value to any competitor.

109.    GEODIS has taken more than adequate measures under the circumstances to maintain the secrecy of its trade secrets: assigning computer access passwords to be used to access GEODIS' computer systems and the electronic files and records residing on them; restricting access to its business premises, including its offices; and having employees follow confidentiality and non-disclosure policies, which expressly prohibit the use and disclosure of such information outside of GEODIS.

21

110.    Defendants set forth in this Count and throughout this Complaint constitutes a threatened misappropriation of GEODIS' trade secret information in violation of the NJUTSA, because Defendants will use GEODIS' confidential and proprietary information without GEODIS' consent and despite the knowledge that this information was acquired by Bravi where he had duties to maintain this confidential information's secrecy and limit its use.

111.    This threatened misappropriation of GEODIS' trade secrets, and Defendants' assistance and facilitation of the same, have caused GEODIS irreparable injury for which monetary damages alone are an inadequate remedy.

112.    The threatened misappropriation of GEODIS' trade secrets by Defendants is willful and malicious, and therefore satisfies the requirement for an award of exemplary (punitive) damages.

113.    This willful and malicious misappropriation of GEODIS' trade secrets justifies the award of reasonable attorneys' fees to GEODIS under the NJUTSA.

114.    Defendants are directly and/or vicariously liable for the acts described herein.

115.    The acts described herein, as a violation of the NJUTSA, are an adequate, independent basis upon which the Court can enter an injunction to prevent Defendants threatened misappropriation.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Four; an award of damages for actual loss caused by the misappropriation; damages for any unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss; damages caused by the

22

misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of the trade secret; exemplary (punitive) damages; reasonable attorneys' fees; injunctive relief; and any other award or relief that the Court deems appropriate.

**COUNT FIVE**
**BREACH OF CONTRACT**
**(AGAINST BRAVI)**

116.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

117.    On December 11, 2020, Bravi concurrently signed a promotion letter and a Non-Solicitation and Confidentiality Agreement (the "Agreement") with GEODIS as a condition of his promotion to the new role of Director of Business Development. *See* **Exhibit A.**

118.    Pursuant to the Agreement, Bravi agreed and promised that he would not solicit GEODIS' clients for a period of two (2) years following his termination of employment with GEODIS. *See* **Exhibit A at § 2.**

119.    Bravi's employment with GEODIS ended on April 3, 2023.

120.    In or around June of 2023, GEODIS was informed by its customer, Maui Jim, that Bravi had been calling and soliciting its business.

121.    Bravi's actions in soliciting GEODIS' customer constitutes a breach of the non-solicitation provision in the Agreement between Bravi and GEODIS.

122.    Further, Bravi acknowledged and promised that he would use or disclose for his benefit or the benefit of anyone other than GEODIS any confidential information. *See*

**Exhibit A at § 3**.

123.    But regardless, based upon a review of Bravi's e-mail records, GEODIS discovered that Bravi sent GEODIS' confidential information via e-mail from his GEODIS e-mail account to his own personal e-mail account on February 22, 2023—**while Bravi was still an employee of GEODIS**. The GEODIS confidential information included six (6) Microsoft Excel spreadsheets containing sales representative performance data and customer sales volumes.

124.    Further, based upon a review of Bravi's e-mail records, GEODIS discovered that Bravi sent another e-mail to his personal e-mail account on February 22, 2023—**while Bravi was still an employee of GEODIS**. This e-mail included Bravi's proposed business plan for developing a sales team in the United States for what would be his future employer, General Noli.   The e-mail and business plan revealed that Bravi used the confidential information he unlawfully transferred to a private e-mail account that same day. The proposed business plan included references to the six (6) sales representatives' compensation.

125.    Through his actions and omissions, Bravi has breached and continues to breach his contractual obligations owed to GEODIS.

126.    As a result, GEODIS has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Five; an award of damages for actual loss caused by Defendants' breach of contract; and any other award or relief that the Court deems

appropriate.

## COUNT SIX
### Breach of Duty of Loyalty – Acquiring Adverse Interests and taking Adverse Action Against Employer
### (Against Bravi)

127.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

128.   Bravi was an employee of GEODIS.  He therefore owed a duty of loyalty to GEODIS, which included but was not limited to not acquiring any interests adverse to GEODIS' and not taking any action contrary to GEODIS' interests while still in its employ.

129.   Bravi breached his duty of loyalty to GEODIS by acquiring interests adverse to GEODIS' and taking actions contrary to its interests during his employment with GEODIS.

130.   By way of example, GEODIS discovered through company e-mail records that Bravi met with a representative of Savino Del Bene Group, a direct competitor of GEODIS, via Microsoft Teams on February 17, 2023—**while Bravi was still an employee of GEODIS**.

131.   Further, GEODIS discovered that on February 20, 2023—**while still an employee of GEODIS**—Bravi sent an e-mail from his GEODIS e-mail account to his personal e-mail account. The e-mail provided "a basic business plan on how to develop a sales team in the US from scratch."

132.   Additionally, based upon a review of Bravi's e-mail records, GEODIS discovered that Bravi sent GEODIS' confidential information via e-mail from his GEODIS

e-mail account to his own personal e-mail account on February 22, 2023—**while Bravi was still an employee of GEODIS**. The GEODIS confidential information included six (6) Microsoft Excel spreadsheets containing sales representative performance data and customer sales volumes.

133.    Based upon a review of Bravi's e-mail records, GEODIS discovered that Bravi sent another e-mail to his personal e-mail account on February 22, 2023—**while Bravi was still an employee of GEODIS**. This e-mail included Bravi's proposed business plan for developing a sales team in the United States for what would be his future employer, General Noli.  The e-mail and business plan revealed that Bravi used the confidential information he unlawfully transferred to a private e-mail account that same day. The proposed business plan included references to the six (6) sales representatives' compensation.

134.    After his separation from GEODIS, Bravi obtained employment with General Noli.

135.    General Noli is part of the Savino Del Bene Group, the direct competitor that Bravi met with via Microsoft Teams on February 17 and prepared a business plan using GEODIS' confidential information to develop a sales team in the United States—**while Bravi was still an employee of GEODIS**.

136.    Bravi's acts and omissions are unlawful, have been and continue to be committed in furtherance of an unlawful objective, and are malicious, intentional, willful, wanton, and in deliberate disregard of GEODIS' rights.

137.    As a result, GEODIS has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Six; an award of damages for actual loss caused by the breach of duty of loyalty; and any other award or relief that the Court deems appropriate.

### COUNT SEVEN
### BREACH OF DUTY OF LOYALTY – VIOLATING EMPLOYER POLICY ON CUSTOMER PRIVACY
### (AGAINST BRAVI)

138.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

139.    GEODIS maintains a strict policy of protecting customer privacy, particularly with regard to customers' sales volumes and sales representatives' performance data.

140.    GEODIS' policy is set forth in its employee handbook.

141.    Bravi's duty of loyalty to GEODIS included adhering to its policy of protecting customer privacy.

142.    Bravi's transmission of GEODIS' customers' private information outside of GEODIS violated its policy and hence his duty of loyalty to GEODIS.

143.    Bravi's acts and omissions are unlawful, have been and continue to be committed in furtherance of an unlawful objective, and are malicious, intentional, willful, wanton, and in deliberate disregard of GEODIS' rights.

144.   As a result, GEODIS has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Seven; an award of damages for actual loss caused by the breach of duty of loyalty; and any other award or relief that the Court deems appropriate.

## COUNT EIGHT
### BREACH OF DUTY OF LOYALTY – MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION
### (AGAINST BRAVI)

145.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

146.   Bravi owed and continues to owe GEODIS a duty not to use or disclose GEODIS' trade secrets or confidential information acquired during his employment with GEODIS.

147.   Bravi breached and continues to breach his duty of loyalty to GEODIS by using and disclosing GEODIS' trade secrets and confidential information for his own benefit and the benefit of his new employer, General Noli.

148.   Bravi's acts and omissions are unlawful, have been and continue to be committed in furtherance of an unlawful objective, and are malicious, intentional, willful, wanton, and in deliberate disregard of GEODIS' rights.

149.   As a result, GEODIS has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Eight; an award of damages for actual loss caused by the breach of duty of loyalty; and any other award or relief that the Court deems appropriate.

### COUNT NINE
### AIDING AND ABETTING BREACH OF DUTY OF LOYALTY – ACQUIRING ADVERSE INTERESTS AND TAKING ADVERSE ACTION AGAINST EMPLOYER
### (AGAINST GENERAL NOLI)

150.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

151.    General Noli has assisted, aided, and/or abetted Bravi in the conduct that constitutes breach of his duty of loyalty to GEODIS, and continues to do so, including but not limited to Bravi's duty not to acquire any interests adverse to GEODIS and not to take any action contrary to GEODIS' interests while still in its employ.

152.    General Noli has been and is aware of its role in assisting, aiding, and/or abetting Bravi in breaching his duty of loyalty to GEODIS.

153.    General Noli has knowingly and substantially assisted Bravi in the conduct that constitutes breach of his duty of loyalty to GEODIS and continues to do so.

154.    As a result, GEODIS has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Nine; an award of damages for actual loss caused by the aiding and abetting; and any other award or relief that the Court deems appropriate.

**COUNT TEN**
**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY – VIOLATING EMPLOYER**
**POLICY ON CUSTOMER PRIVACY**
**(AGAINST GENERAL NOLI)**

155.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

156.   General Noli has assisted, aided, and/or abetted Bravi in the conduct that constitutes breach of his duty of loyalty to GEODIS, and continues to do so, including but not limited to Bravi's duty to adhere to GEODIS' policy of protecting customer privacy.

157.   General Noli has been and is aware of its role in assisting, aiding, and/or abetting Bravi in breaching his duty of loyalty to GEODIS.

158.   General Noli has knowingly and substantially assisted Bravi in the conduct that constitutes breach of his duty of loyalty to GEODIS and continues to do so.

159.   As a result, GEODIS has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Ten; an award of damages for actual loss caused by the aiding and abetting; and any other award or relief that the Court deems appropriate.

**COUNT ELEVEN**
**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY – MISAPPROPRIATION OF**
**TRADE SECRETS AND CONFIDENTIAL INFORMATION**
**(AGAINST GENERAL NOLI)**

160.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

161.   General Noli has assisted, aided, and/or abetted Bravi in the conduct that

constitutes breach of his duty of loyalty to GEODIS, and continues to do so, including but not limited to Bravi's duty not to use or disclose GEODIS' trade secrets or confidential information acquired during his employment with GEODIS.

162.    General Noli has been and is aware of its role in assisting, aiding, and/or abetting Bravi in breaching his duty of loyalty to GEODIS.

163.    General Noli has knowingly and substantially assisted Bravi in the conduct that constitutes breach of his duty of loyalty to GEODIS and continues to do so.

164.    As a result, GEODIS has been damaged and harmed, continues to be damaged and harmed, and has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Eleven; an award of damages for actual loss caused by the aiding and abetting; and any other award or relief that the Court deems appropriate.

### COUNT TWELVE
### TORTIOUS INTERFERENCE WITH THE CONTRACT OF BRAVI
### (AGAINST GENERAL NOLI)

165.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

166.    Upon information and belief, General Noli knew of the Agreement between GEODIS and Bravi.

167.    General Noli intentionally and without justification interfered with the contractual relationship between GEODIS, on the one hand, and Bravi, on the other hand, and encouraged and induced Bravi to breach his Agreement with GEODIS and continues to encourage and induce him to continue said breach.

31

168.    As a result, GEODIS has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Twelve; an award of damages for actual loss caused by the tortious interference of the contract of Bravi; and any other award or relief that the Court deems appropriate.

### COUNT THIRTEEN
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AND PROSPECTIVE ECONOMIC ADVANTAGE
### (AGAINST ALL DEFENDANTS)

169.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

170.    GEODIS has developed and maintained and continues to develop and maintain contractual and prospective relationships with customers, as well as with prospective customers, of whom Bravi was aware in his capacity as a GEODIS employee in the course of his employment with GEODIS.

171.    Defendants know, knew, or reasonably should know or should have known about these contractual and prospective relationships.

172.    Defendants intentionally, maliciously, and improperly interfered with, and continue to interfere with, GEODIS' contractual and prospective relationships with its customers and, upon information and belief, its prospective customers, including but not limited to inducing them to sever or not to commence contractual relationships with GEODIS.

FP 47926022.1

173.   Defendants have used and continue to use GEODIS' trade secrets and confidential information to compete unlawfully with GEODIS and to undermine GEODIS' existing contractual and prospective relationships with customers and prospective customers.

174.   As a result, GEODIS has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Thirteen; an award of damages for actual loss caused by the tortious interference with contractual relationships and prospective economic advantage; and any other award or relief that the Court deems appropriate.

### COUNT FOURTEEN
### UNFAIR COMPETITION
### (AGAINST ALL DEFENDANTS)

175.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

176.   By virtue of their acts and omissions set forth in detail above, Defendants have engaged in unfair competition with GEODIS, for example by misappropriating its trade secrets, confidential information, and proprietary information; by interfering with its existing and prospective customer relationships; by improperly capitalizing on the goodwill of GEODIS; and by employing unfair and deceptive practices intended to hinder, delay, divert, or prevent GEODIS from fairly competing with Defendants.

177.   Defendants have engaged in such acts or omissions maliciously and for the sole purpose of inflicting harm on GEODIS, or to benefit themselves at the expense of

GEODIS.

178.   As a result, GEODIS has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Fourteen; an award of damages for actual loss caused by the unfair competition; and any other award or relief that the Court deems appropriate.

## COUNT FIFTEEN
### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

179.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

180.   Defendants have been unjustly enriched at GEODIS' expense.

181.   As a result, GEODIS has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Fifteen; an award of damages for actual loss caused by the unjust enrichment; and any other award or relief that the Court deems appropriate.

## COUNT SIXTEEN
### CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

182.   GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

183.   Defendants conspired and agreed to engage in the unlawful and tortious conduct described herein, deliberately engaged in such conduct in furtherance of their

34

unlawful plans and schemes, acted on behalf of one another at all relevant times, intentionally and/or knowingly accepted the illicit benefits of the conspiracy, and intentionally and/or knowingly participated in, profited from, and/or ratified the misconduct of one another.

184.    Each Defendant is liable for the conduct of the other Defendant and any other participants in the conspiracy.

185.    As a result of Defendants' conduct, GEODIS has suffered and will continue to suffer injury, damages, and irreparable harm.

**WHEREFORE**, Plaintiff GEODIS respectfully requests judgment in its favor and against Defendants on Count Sixteen; an award of damages for actual loss caused by the civil conspiracy; and any other award or relief that the Court deems appropriate.

**COUNT SEVENTEEN**
**I<span>NJUNCTIVE</span> R<span>ELIEF</span>**
**(A<span>GAINST ALL</span> D<span>EFENDANTS</span>)**

186.    GEODIS re-alleges, and incorporates by this reference, the allegations in the preceding paragraphs as though set forth fully herein.

187.    By virtue of the foregoing, GEODIS has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

188.    Unless Defendants are preliminarily and permanently enjoined from the foregoing conduct, GEODIS will be irreparably harmed by: (a) disclosure and misuse of trade secrets and confidential information, including but not limited to information regarding GEODIS' sales representatives' performances, along with its customers' sales

35

volumes, that is solely the property of GEODIS; (b) loss of business; (c) loss of customer goodwill and business reputation; (d) loss of customer relationships and prospective relationships; (d) present economic loss, which is unascertainable at this time; and (e) future economic loss, which is currently incalculable.

189.   GEODIS has no adequate remedy at law.

**WHEREFORE**, Plaintiff GEODIS respectfully requests that the Court enter judgment on Count Seventeen in its favor and against Defendants and award the equitable remedies of a preliminary and permanent injunction, and any other relief the Court deems equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff GEODIS, being without adequate remedy at law, and being threatened with the continuance of irreparable injury, demands judgment in its favor and against Defendants for the following relief:

A.   A preliminary and permanent injunction, enjoining the Defendants, directly or indirectly, and whether alone or in concert with others, including but not limited to any officer, agent, employee, and/or representative of General Noli, from:

(i)   soliciting, diverting away, or attempting to solicit or divert away any GEODIS customer;

(ii)   retaining, using, possessing, disclosing to any person, or facilitating the use of or assisting others to use, GEODIS' data, secrets, and confidential information as described herein and in the Non-Solicitation and Confidentiality Agreement between Bravi and GEODIS; and

(iii)   otherwise engaging in any activity in breach of Bravi's Non-Solicitation and Confidentiality Agreement.

36

B.      An Order that Defendants, and anyone acting in concert or participation with them, including but not limited to counsel, and any agent, employee, officer, or representative of General Noli, return to GEODIS' counsel any and all GEODIS data, secrets, trade secrets, and confidential and/or proprietary information; records or information pertaining to GEODIS' customers or prospective customers and GEODIS' employees' performance data, whether in original, copied, computerized, handwritten or any other form; to purge any such information from their possession, custody, or control, within 24 hours of notice to Defendants or their counsel of the terms of the Court's Order; provided, however, that any information in computerized or electronic form (including but not limited to computers, tablets, smartphones, compact or floppy discs, flash (thumb) drives, hard drives, cloud storage, and any other device or media in or on which data can be electronically stored) shall be given by Defendants to their counsel within 24 hours of notice to Defendants or their counsel of the terms of the Court's Order; Defendants' counsel shall preserve the integrity of such data, devices, and storage media, and shall immediately (and in no event later than seven calendar days after the entry of this Order) make any and all such data, devices, and media available for inspection, imaging, and duplication by GEODIS' counsel and/or GEODIS' computer forensic employees or consultants.   After imaging and inspection of the electronic devices by GEODIS, all GEODIS data, secrets, trade secrets, and confidential and/or proprietary information shall be deleted and/or purged from the devices by GEODIS;

C.      An award of compensatory and consequential damages, in an amount to be determined at trial, incurred by GEODIS as a result of the actions of Defendants;

D.      Disgorgement of all of the compensation GEODIS paid the Bravi during the period of his disloyalty;

E.      An accounting and disgorgement of any profits earned by the Defendants as a result of Defendants' unlawful activities;

F.      An Order that Defendants protect and safeguard GEODIS' data, secrets, trade secrets, and confidential and/or proprietary information, including but not limited to any data, property, materials, documents, records, and information relating to the customers, prospective customers, employees, or activities of GEODIS;

G.      Punitive damages against the Defendants;

H.      Costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

I.      Such other and further relief as this Court may deem equitable and just.

## <u>JURY DEMAND</u>

GEODIS demands a jury trial on all issues in this action.

Respectfully submitted by:

**FISHER & PHILLIPS LLP**

Date: <u>August 10, 2023</u>

<u>*/s/ Brian A. Casal*</u>
Brian A. Casal, Esquire
Heather C. McFeeley, Esquire
Fisher & Phillips LLP
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
(610) 230-2150 (phone)
(610) 230-2151 (facsimile)
bcasal@fisherphillips.com
hmcfeeley@fisherphillips.com